**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich (SBN 159936)
mgr@reichradcliffe.com
Adam T. Hoover (SBN 243226)
adhoover@reichradcliffe.com
2030 Main Street, Suite 1300
Irvine, CA 92614
Phone: (949) 975-0512

**GAINEY MCKENNA & EGLESTON**
Gregory M. Egleston (*Pro Hac Vice to be submitted*)
gegleston@gme-law.com
260 Madison Avenue, 22nd Floor
New York, New York 10016
Phone: (212) 983-1300

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M. BRAIN, Individually and on behalf of all others similarly situated. <br><br> Plaintiff, <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER, LLC, <br><br> Defendants, | CASE NO.: <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TIAL DEMANDED** |

Plaintiff, individually, and on behalf of all others similarly situated, by and through his attorneys, brings this Class Action Complaint against Defendants Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster, LLC ("Ticketmaster" and, together with Live Nation, "Defendants"), and complains and alleges upon personal knowledge as to himself and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendants for their failure to secure and safeguard his and approximately 560 million other individuals' personally identifying information ("PII"), including full names, addresses, email addresses, phone numbers, and credit card details.

2. Ticketmaster is one of the largest ticket sales and distribution companies in the world. Ticketmaster operates a digital ticketing platform that requires customers to provide their PII prior to purchase. Upon information and belief, in February 2009, Ticketmaster entered into an agreement to merge with event promoter Live Nation. Together, Defendants promote, operate, and manage entertainment venues and ticket sales for live entertainment events.

3. On or about, May 20, 2024, Plaintiff's and Class Members' personal information— which they entrusted to Defendants on the mutual understanding that Defendants would protect it against unauthorized disclosure—was compromised in a data breach (hereafter, the "Data Breach").

4. Then, on or around June 26, 2024, over a month after Defendants learned of the Data Breach, Defendant Ticketmaster notified Plaintiff of the Data Breach via email, which stated:

> We wanted to inform you that Ticketmaster recently discovered unauthorised activity in a third-party cloud database that contained limited personal information of some customers who bought tickets to events in North America (U.S., Canada and/or Mexico).

The database held details such as email, phone number, as well as other personal information you provided to us including payment card information such as encrypted credit or debit card numbers and expiration dates.

5. The Data Breach included personal details of about 560 million Ticketmaster customers. The PII compromised in the Data Breach was exfiltrated by cyber-criminals who target PII for its value to identity thieves.

6. ShinyHunters, the group claiming responsibility for the Data Breach, has been linked to a string of high-profile data breaches resulting in millions of dollars in losses.

7. The hackers have listed the 1.3 terabytes of PII for a one-time sale price of $500,000.00 on the BreachForums marketplace on the dark web.

8. The invasion of the Plaintiff's and Class Members' privacy suffered in this Data Breach constitutes an injury in fact. Additionally, the Plaintiff and Class Members are at an increased risk of future harm, including identity theft, fraud, spam, phishing, or other impersonation attacks.

9. There is a substantial risk of future identity theft or fraud where the Plaintiff's and Class Members' PII was targeted by a sophisticated hacker group (ShinyHunters), known for stealing and reselling as much personal and financial data as they can. Furthermore, since 2020, ShinyHunters has stolen over 900 million customer records in a series of high-profile data breaches (*e.g.*, GitHub, AT&T and Pizza Hut). Upon information and belief, ShinyHunters has accumulated enough personal information from that series of data breaches to be able to open a bank account or commit other fraud using stolen identities.

10. Plaintiff and Class Members face a substantial risk of future spam, phishing, or other social engineering attacks where their full names, addresses, email addresses, and phone numbers were stolen by a hacker group

(ShinyHunters), known for stealing and reselling personal data. For example, once a cybercriminal has sold a stolen email address or phone number, that email address or phone number is sent spam messages that are "carefully calculated to get the recipient to click on a link that infects a computer with malware." Once the computer is infected with malware, the computer is locked down and the user is sent a ransom demand, which must be paid to regain access to the computer.

11.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

12.     The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable data protection procedures, including vendor management, necessary to protect consumers' PII from a foreseeable and preventable risk of unauthorized disclosure.

13.     Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendants, and thus, Defendants were on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

14.     Defendants disregarded the rights of Plaintiff and Class Members by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems, or the data systems of its vendors, were protected against unauthorized intrusions; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach. Plaintiff and Class Members are now at risk because of Defendants' wrongful conduct.

15.     As a result of the Data Breach, Plaintiff and Class Members have been exposed to a substantial risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft. Plaintiff and Class Members may also incur out of pocket costs, for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft. Plaintiff and Class Members may also incur out of pocket costs, for purchasing products to protect themselves from spam emails, phone calls, and text messages.

16.     Plaintiff brings this class action lawsuit on behalf all those similarly situated to address Defendants' inadequate safeguarding of Class Members' PII that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been disclosed to an unauthorized third party and precisely what information was accessed.

## JURISDICTION

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there

are more than 100 members in the proposed class, and at least one member of the class, including Plaintiff, is a citizen of a state different from Defendants.

18.     This Court has personal jurisdiction over Defendants because both Defendants have purposefully availed themselves of the laws, rights, and benefits of the State of California. Each Defendant is headquartered in California and has engaged in substantial activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout the United States in this judicial district; (ii) conducting substantial business in this forum; and/or (iii) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in California and in this judicial District.

19.     This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (i) the Company maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## **THE PARTIES**

### **Plaintiff**

21.     Plaintiff is one of Defendants' customers and has purchased tickets for events in the United States from Defendants on multiple occasions since 2017. Plaintiff is a citizen of the United Kingdom.

22.     As a condition of purchasing tickets from Defendants, Plaintiff was required to provide Defendants with his PII, including his name, date of birth, address, and credit and/or debit card information.

23.     Based on representations made by Defendants, Plaintiff believed Defendants had implemented and maintained reasonable security and practices to protect his PII.  With this belief in mind, Plaintiff provided his PII to Defendants.

24.     In the early hours of June 27, 2024, Plaintiff received an email from Defendant Ticketmaster notifying him that his PII was exposed in the Data Breach.

25.     As a direct result of the Data Breach, Plaintiff has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of his highly sensitive PII; deprivation of the value of his PII; and overpayment for services that did not include adequate data security.

**Defendants**

26.     Defendant Live Nation is a Delaware corporation headquartered in Beverly Hills, California. Live Nation produces live concerts and offers digital ticketing services for leading arenas, stadiums, professional sports franchises and leagues, college sports teams, performing arts venues, museums, and theaters around the world. Live Nation provides ticketing solutions through websites, mobile apps, retail outlets and call centers.

27.     Defendant Ticketmaster is a Virginia corporation headquartered in Beverly Hills, California. Defendant Ticketmaster is a wholly-owned subsidiary of Defendant Live Nation. Ticketmaster operates as a ticket distribution company; it buys, transfers, and sells tickets for live music, sporting, arts, theater, and family events around the around the world.

## SUBSTANTIVE ALLEGATIONS

**Background**

28.     Defendants promote, operate, and manage entertainment venues and ticket sales for live entertainment events. Defendants permit users to buy and sell

tickets online for concerts, sports, theater, family, and other events using the website www.ticketmaster.com.

29. Plaintiff and Class Members are current and former customers of Ticketmaster and have used, or created accounts on, ticketmaster.com, as well as its international sites, including www.ticketmaster.co.uk.

30. Defendants require consumers who purchase tickets on their platform to provide their PII to them, both to facilitate the ticket sales and also for Ticketmaster's own business purposes. Defendants promise to keep consumers' PII secure.

31. In the course of their relationship, customers, including Plaintiff and Class Members, provided Defendants with at least the following: full names, dates of birth, contact information, and credit card, debit card, or banking information.

32. Upon information and belief, while collecting PII from customers, including Plaintiff, Defendants promised to provide security measures to protect customer information. When customer data is transferred to a third-party, Defendants promised to "ensure that appropriate safeguards are put in place" to ensure customer data is "protected to the highest standard." More specifically, when personal information is transferred to a third party, Defendants represented that they would "use contractual measures and internal mechanisms requiring the recipient to comply with the privacy standards of the exporter." These promises were contained in the applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.[1]

33. Moreover, Ticketmaster provides that:

---

[1] *Ticketmaster Privacy Policy*, https://privacy.ticketmaster.com/privacy-policy (last accessed July 9, 2024)

Our goal is to maintain your trust and confidence by handling your personal information with respect and putting you in control … As a global company, our fans are located all over the world, depending on your market there are specific laws and regulations around privacy rights such as the GDPR in Europe, LGPD in Brazil and CCPA in United States … We have security measures in place to protect your information.[2]

34.     Plaintiff and the Class Members, as customers of Defendants, relied on these representations and on these sophisticated business entities to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

35.     Defendants collect, and sell the PII of its customers, former customers, and other personnel. Defendants collect personal information when a customer buys merchandise or a ticket to an event. Defendants then sell personal information like names, physical addresses, phone numbers, email addresses, IP addresses, information about transactions, preferences, and attributes, cookies and device attributes to business partners, data brokers, and service providers.

36.     By obtaining, collecting, and using Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII from unauthorized disclosure.

37.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII and would not have entrusted it to Defendants absent a promise to safeguard that information. Indeed, Defendants

---

[2]     *Id.*

make the following representations to customers on their ticketmaster.com website:[3]

> "The security of our fans' information is a priority for us."

> "We take all necessary security measures to protect personal information that's shared and stored with us."

> "We work with our partners to put on amazing live events and provide additional services that we think you'll love. We always ask them to maintain the same standards of privacy."

> "We embed privacy in the development of our products and services to ensure that we always respect your personal information."

> "As an international company, no matter where you are located, our control framework is built around global data protection laws."

> "We comply with all applicable data protection laws and listen to your expectations when it comes to how your information is handled."

> "We have a global privacy team of trust and security professionals that ensure end-to-end protection of your personal information throughout the data lifecycle."

38.    Plaintiff and the Class Members relied on Defendants to keep their PII confidential and securely maintained, to ensure that third-party vendors adhered to reasonable security measures, to use this information for business purposes only, and to permit only authorized uses and disclosures of this information.

39.    Defendants' representations about their commitment to security and confidentiality of the personal information they collect and share with third parties

---

[3]    *Ticketmaster Commitments*, https://privacy.ticketmaster.com/our-commitments (last accessed July 9, 2024).

was false or misleading as an unauthorized person was able to access and exfiltrate personal data from one of Defendants' cloud database vendors. Defendants have failed to maintain the confidentiality and security of Plaintiff's and the Class Members' PII and/or failed to take reasonable steps to protect Plaintiff's and the Class Members' PII from disclosure.

**The Data Breach**

40. On May 20, 2024, Live Nation identified unauthorized activity within a third-party cloud database environment containing personal data (primarily from its Ticketmaster subsidiary).

41. On May 27, 2024, Live Nation discovered that the personal details of about 560 million Ticketmaster customers—including Plaintiff and Class Members—was exfiltrated by cyber-criminals demanding a payment of $500,000.00 for the data.

42. Information disclosed by ShinyHunters,[4] the cyber-criminals responsible for the Data Breach, indicates the stolen information includes "a treasure trove of sensitive user information, including full names, addresses, email addresses, phone numbers, ticket sales and event details, order information, and partial payment card data," amounting to 1.3TB of data.

43. With the information that was accessed in the Data Breach, "cybercriminals can commit identity theft and financial fraud, launch phishing

---

[4] ShinyHunters is a criminal group known for engaging in audacious hacking sprees, then selling trove after trove of freshly stolen data on the dark web. ShinyHunters has been linked to a string of high-profile data breaches, resulting in millions of dollars of losses. In 2020, the group claimed to have stolen data from nearly a dozen websites ranging from an Indonesian ecommerce platform to the Minnesota Star Tribune newspaper, a dating app, a meal kit company, the Chronicle of Higher Education, and Microsoft's private Github account. The following year, the group sold a database of stolen information from 70 million AT&T customers. And in September of last year, ShinyHunters stole data for nearly 200,000 Pizza Hut customers.

attacks, or take over online accounts. They may also use the data for blackmail, extortion, medical identity theft or credential stuffing which could lead to significant financial losses for customers, [and] damage to credit scores."

44.     Data stolen in the Data Breach included unencrypted customer data that had been shared or stored with a third-party cloud database vendor. Plaintiff further believe that their PII and that of the Class Members was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of the ShinyHunters group and other cybercriminals that commit cyber-attacks of this type.

45.     On May 31, 2024, Defendants notified shareholders via a Form 8-K filing with the Securities & Exchange Commission that it was aware of the breach and had "launched an investigation with industry-leading forensic investigators to understand what happened."

46.     On June 7, 2024, it was reported by Canadian news outlet, *Global News*, that "a sample of the data" had been shared with *Global News* and that the news outlet was able to partially verify the information contained in the sample shared with them.[5]

47.     Then, on June 21, 2024, it was reported by *Malwarebytes Labs*, that "[t]he cybercriminal acting under the name "Sp1d3r" gave away the first 1 million records that are part of the data set that they claim to have stolen from Ticketmaster/Live Nation. The files were released without a price, for free."[6]

---

[5]     Kathryn Mannie, *Ticketmaster hack: Canadians' data likely among leaked information*, Global News (Jun. 7, 2024), https://globalnews.ca/news/10543855/ticketmaster-hack-canadian-data-breach-leak/#:~:text=There (last accessed July 9, 2024).

[6]     Pieter Arntz, *First million breached Ticketmaster records released for free*, Malwarebytes Labs (Jun. 21, 2024), https://www.malwarebytes.com/blog/news/2024/06/first-million-breached-ticketmaster-records-released-for-free (last accessed July 9, 2024).

48.     Finally, over a month after Defendants learned of the Data Breach, Ticketmaster notified "customers whose data was exposed in a security incident." Accordingly, Plaintiff and certain Class Members based in the U.S., Canada, and Mexico received the notice on or around June 27, 2024 which informed them of the Data Breach.

49.     However, to date, millions of Class Members based around the world are yet to receive any notification whatsoever, despite their PII likely having been exposed.

**The Data Breach was Avoidable**

50.     Upon information and belief, the Data Breach was a direct result of Defendants' failure to implement adequate and reasonable data protection procedures, including vendor management, necessary to protect Plaintiff's and Class Members' PII from a foreseeable and preventable risk of unauthorized disclosure.

51.     Upon information and belief, the Data Breach occurred as the result of a ransomware attack. In a ransomware attack the attackers use software to encrypt data on a compromised network, rendering it unusable and then demand payment to restore control over the network. Ransomware groups frequently implement a double extortion tactic, where the cybercriminal posts portions of the data to increase their leverage and force the victim to pay the ransom, and then sells the stolen data in cybercriminal forums and dark web marketplaces for additional revenue."

52. To prevent and detect cyber-attacks and/or ransomware attacks, Defendants could and should have implemented, as recommended by the United States Government, the following measures, among others:[7]

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

---

[7]  *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomwareprevention-and-response-for-cisos.pdf/view (accessed July 9, 2024)

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

53.     Defendants' security practices were ineffective since Defendants did not ensure their third-party vendors were responsible for implementing them. When a vendor is using, collecting, or storing personal data, the following are common data protection requirements:[8]

Vendor Management

a.      Require the vendor to impose technical and organizational measures to protect personal data, similar to those listed above.

b.      Ensure that the vendor requires each individual processing the personal data to be subject to a duty of confidentiality.

c.      Require the vendor (and any subcontractors) to comply with all applicable statutes and data protection obligations as the Defendants.

---

[8]     *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/businessguidance/resources/protecting-personal-information-guide-business (accessed July 9, 2024).

d. Require the vendor to cooperate with reasonable privacy assessments and security audits.

e. Prohibit the vendor from retaining, using, or disclosing personal data for any purpose other than the specified business purpose.

f. Require the vendor to notify the Defendants of a data breach or after vendor makes a determination that it can no longer meet its data protection obligations.

g. Require the vendor to provide timely notice to individuals impacted by a data breach event.

54. Given that Defendants stored the PII of its current and former customers, Defendants could and should have implemented all the above measures to prevent and detect cyberattacks. The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of Plaintiff's and the Class members' PII.

55. Moreover, Defendants knew, or ought to have known, that large, prominent companies like Ticketmaster are particularly vulnerable to cyberattacks because of the sensitive nature of the information that they collect and maintain. Because of this vulnerability, and because of the frequency and scale of data breaches in recent years, companies like Ticketmaster that routinely handle and maintain sensitive customer information should, at a minimum, implement industry best practices.

56. These practices include educating and training employees; requiring strong passwords and multi-factor authentication for employees and users; implementing multi-layer security like firewalls, antivirus programs, and anti-malware software; limiting access to sensitive data; backing up and encrypting

data; setting up network firewalls; monitoring and limiting network ports; and monitoring and limiting access to physical security systems.

57. Ticketmaster failed to meet the minimum standards of any of the following frameworks laying out industry best practices: the NIST Cybersecurity Framework Version 1.1 (including at a minimum PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards and reasonable for Defendants to meet.

58. These frameworks represent the established industry norms for data security, and Ticketmaster's failure to adhere to these widely accepted standards caused the Data Breach and has provided an avenue for criminal exploitation.

**The Impact of the Data Breach**

59. Defendants knew and understood unencrypted PII is valuable and highly sought after by nefarious third parties seeking to illegally monetize that PII. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding customer PII and of the foreseeable consequences that would occur if Defendants' network (or the network of their vendors) was breached, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

60. Now, as a result of Ticketmaster's failure to implement and adhere to security measures that would have protected their PII, Ticketmaster customer PII is now in the hands of unauthorized third parties, which may include thieves, unknown criminals, banks, credit companies, and other potentially malicious individuals.

61. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records. The Class is incurring and will continue to

incur such damages in addition to any harms associated with the fraudulent use of their PII.

62. Indeed, as a result of the Data Breach, Plaintiff and the Class Members face an increased risk of identity theft, phishing attacks, and related cybercrimes. Those affected are experiencing heightened and prolonged anxiety and fear, knowing they will be vulnerable to cybercrimes for years to come.

63. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures.

64. PII is of great value to criminals. Data such as name, address, phone number, and credit history has been sold at prices ranging from $40 to $200 per record.[9]

65. PII can also be sold at prices exceeding $1,000.[10] A stolen credit or debit card number can sell for $15 to $110 on the Dark Web.[11] Criminals can also purchase access to entire company data breaches for an average cost of between $2,000 to $4,000.[12]

[9] *In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed July 9, 2024).

[10] Ryan Smith, *Revealed – How much is Personal information worth on the dark web?*, Insurance News (May 1, 2023), https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-muchis-personal-information-worth-on-the-dark-web-444453.aspx. (last accessed July 9, 2024).

[11] Miklos Zoltan, *Dark Web Price Index 2023*, Privacy Affairs (April 23, 2023), https://www.privacyaffairs.com/dark-web-price-index-2023/. (last accessed July 9, 2024).

[12] Kaspersky, *Cybercriminals sell access to companies via the Dark Web from $2000* (June 15, 2022), https://www.kaspersky.com/about/press-releases/2022_cybercriminals-sell-access-to-companies-via-the-dark-web-from-2000 (last accessed July 9, 2024).

66.     Law-abiding consumers place a high value on the privacy of that data. Researchers shed light on how many consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[13]

67.     Given these facts, by transacting business with Plaintiff and Class Members, collecting and selling their PII, using their PII to market additional products and services to them, and then compromising the privacy of their PII has deprived Plaintiff and Class Members of the benefit of their bargain with Defendants.

68.     The invasion of the Plaintiff's and Class Members' privacy suffered in this Data Breach constitutes an injury in fact. Additionally, Plaintiff and Class Members are at an increased risk of future harm, including identity theft, fraud, spam, phishing, or other impersonation attacks.

69.     There is a substantial risk of future identity theft or fraud where the Plaintiff's and Class Members' PII was targeted by a sophisticated hacker group (ShinyHunters), known for stealing and reselling as much personal and financial data as they can. Furthermore, since 2020, ShinyHunters has stolen over 900 million customer records in a series of high-profile data breaches (*e.g.*, GitHub, AT&T, Pizza Hut). Upon information and belief, ShinyHunters has accumulated enough personal information from that series of data breaches to be able to open a bank account or commit other fraud using stolen identities.

70.     Plaintiff and Class Members face a substantial risk of future spam, phishing, or other social engineering attacks where their full names, addresses,

---

[13]     Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) Information Systems Research 254 (June 2011), accessible at https://www.jstor.org/stable/23015560?seq=1. (last accessed July 9, 2024).

email addresses, and phone numbers were stolen by a hacker group known for selling personal data on the dark web.

71.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experience an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

72.     As a result of the Data Breach, unauthorized individuals can easily access the PII of Plaintiff and Class Members. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal PII to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes.

73.     Plaintiff's and Class Members' PII is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

74.     Once PII is exposed, it is nearly impossible to ensure the information is fully recovered or protected from future misuse.

75.     Thus, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach and signing up for the credit monitoring and identity theft protection services.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

77.     The Class that Plaintiff seeks to represent is defined as:

**Primary Class**

All individuals whose PII was compromised in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

**United Kingdom Subclass**

All individuals residing in the United Kingdom whose PII was compromised in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach

78.     Collectively, the Primary Class and United Kingdom Subclass are referred to as the "Classes."

79.     Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

80.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

81.     **Numerosity**: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendants, upon information and belief, millions of individuals were impacted in Data Breach.

82.     **Commonality**: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. Among the questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, including (i) whether and to what extent Defendants had a duty to protect the PII of Plaintiff and Class Members; (ii) whether Defendants had respective duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties; (iii) whether Defendants had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes; (iv) whether Defendants failed to adequately safeguard the PII of Plaintiff and Class Members; (v) when Defendants actually learned of the Data Breach; (vi) whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised; (vii) whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised; (viii) whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; (ix) whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data

Breach to occur; (x) whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct; (xi) whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

83. **Typicality:** Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffer from the same violations of the law as each other member of the Classes.

84. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

85. **Superiority:** a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress from Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

## COUNT I

## (Negligence)

86.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

87.    Defendant owed a duty under common law to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

88.    Defendants' duty included a responsibility to ensure its vendors: (i) implemented reasonable measures to detect and prevent unauthorized intrusions into their network; (ii) were contractually obligated to adhere to the requirements of Defendants' privacy policy; (iii) were required to comply with the same statutes and data protection obligations as the Defendants; (iv) were required to submit to regular privacy assessments and security audits; (v) were regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) were obligated to provide timely notice to individuals impacted by a data breach event.

89.    Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive practices that affect commerce. Deceptive practices, as interpreted and enforced by the FTC, include failing to adhere to a company's own stated privacy policies.

90.    Defendants also had a duty to exercise appropriate practices to remove former customers' PII they were no longer required to retain. Defendants had a

duty to promptly and adequately notify Plaintiff and the Classes of the Data Breach.

91.     Defendants have a duty to adequately disclose that the PII of Plaintiff and the Classes within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Classes to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

92.     Defendants breached their duties, pursuant to the FTC Act, and other applicable standards, and thus were negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

(a)     Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

(b)     Failing to adequately monitor the security of their networks and systems;

(c)     Allowing unauthorized access to Class Members' PII;

(d)     Failing to detect in a timely manner that Class Members' PII had been compromised;

(e)     Failing to remove former customers' PII it was no longer required to retain;

(f)     Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and,

(g)     Failing to ensure their vendors implemented data security

practices consistent with Defendants' published privacy policies.

93. Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statue was intended to guard against.

94. The injuries resulting to Plaintiff and the Classes because of Defendants failure to use adequate security measures was reasonably foreseeable. Further, the Data Breach was reasonably foreseeable given the Defendants prior experience with cyberattacks and data breaches.

95. Plaintiff and the Class were the foreseeable victims of a data breach. Defendants knew or should have known of the inherent risks in collecting and storing PII, the critical importance of protecting that PII, and the necessity of protecting PII transmitted to and maintained on third party systems.

96. Plaintiff and the Classes had no ability to protect the PII in Defendants' possession. Defendants were in the best position to protect against the harms suffered by Plaintiff and the Classes as a result of the Data Breach.

97. But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and the Classes, their PII would not have been compromised. There is a close causal connection between Defendants' failure to implement security measures to protect the PII of Plaintiff and the Classes and the harm, or risk of imminent harm, suffered by Plaintiff and the Classes.

98. As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase

in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

99. Additionally, as a direct and proximate result of Defendants' negligence, Plaintiff and the Classes have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

100. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## COUNT II

### (Negligence *Per Se*)

101. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

102. Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive practices that affect commerce. Deceptive practices, as interpreted and enforced by the FTC, include failing to adhere to a company's own stated privacy policies.

103. Defendants violated Section 5 of the FTC Act by failing to adhere to its own Privacy Policy regarding the confidentiality and security of Plaintiff and Class Members information. Defendants further violated Section 5 of the FTC Act, and other state consumer protection statutes by failing to use reasonable measures to protect PII.

104. Defendants' violations of Section 5 of the FTC Act, and other state consumer protection statutes, constitutes negligence *per se*.

105. Plaintiff and Class Members are within the class of persons Section 5 of the FTC Act, and other state consumer protection statutes, were intended to protect. Moreover, the harm that has occurred is the type of harm the FTC Act, and similar state statutes were intended to guard against.

106. But for Defendants wrongful and negligent breach of duties owed to Plaintiff and the Classes, the PII of Plaintiff and the Class would not have been compromised.

107. As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

108. As a direct and proximate result of Defendants' negligence, Plaintiff and the Classes have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

109. Additionally, as a direct and proximate result of Defendants'

negligence, Plaintiff and the Classes have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

110. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## COUNT III

## (Breach of Fiduciary Duty)

111. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

112. As a condition of obtaining services or employment from Defendants, Plaintiff and Class Members gave Defendants their PII in confidence, believing that Defendants would protect that information. Plaintiff and Class Members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiff's and Class Members' PII created a fiduciary relationship between Defendants and Plaintiff and Class Members. In light of this relationship, Defendants must act primarily for the benefit of their customers, which includes safeguarding and protecting Plaintiff's and Class Members' PII.

113. Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. They breached that duty by failing to ensure that the third parties they contract with and share PII with properly protect the integrity of the system containing Plaintiff's and Class Members' PII, failing to comply with the data security guidelines set forth by the FTC, and otherwise failing to safeguard Plaintiff's and Class Members' PII that they collected, shared, and stored.

114.   As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

## <u>COUNT IV</u>

### <u>(Breach of Implied Contract)</u>

115.   Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

116.   Defendants require their customers, including Plaintiff and Class Members, to submit non-public PII in the ordinary course of providing ticketing services for live entertainment events.

117.   Plaintiff and the Classes entrusted their PII to Defendants. In so doing, Plaintiff and the Classes entered implied contracts with Defendants by which Defendants agreed to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiff and the Classes if their data had been compromised or stolen.

118.   Defendants promulgated, adopted, and implemented written privacy policies whereby they promised Plaintiff and Class Members that they would (a)

use PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt notice of any unauthorized access and/or theft of their PII, (e) reasonably ensure their vendors safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

119. Plaintiff and Class Members would not have entrusted their PII to Defendants in the absence of their implied promise to implement reasonable data protection measures.

120. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

121. Defendants breached the implied contracts it made with Plaintiff and the Classes by failing to protect their personal information, by failing to delete the information once the relationship ended, and by failing to provide adequate notice of the Data Breach.

122. As a direct and proximate result of Defendants breach of the implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

123. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## COUNT V

## (Unjust Enrichment)

124. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

125. Plaintiff brings this Count in the alternative to the breach of implied contract count above.

126. By providing their PII, Plaintiff and Class Members conferred a

monetary benefit on Defendants. Defendants knew that Plaintiff and Class Members conferred a benefit upon them and have accepted and retained that benefit. Defendants sold their PII and used the data to market and sell additional services to Plaintiff and Class Members.

127.   Defendants failed to secure Plaintiff's and Class Members' PII and, therefore, did not fully compensate Plaintiff or Class Members for the value that their PII provided.

128.   If Plaintiff and Class Members had known that Defendants would not use adequate data security practices, they would not have entrusted their PII to Defendants.

129.   Under the circumstances, it would be unjust for Defendants to retain any of the benefits that Plaintiff and Class Members conferred upon them.

130.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

131.   Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all

profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

<u>**COUNT VI**</u>

**(Violation of the United Kingdom's Data Protection Act 2018 and/or GDPR)**

**(On Behalf of Plaintiff and the United Kingdom Subclass)**

132.   Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

133.   Plaintiff asserts this claim for relief on behalf of himself and the United Kingdom Subclass.

134.   Defendants' conduct, as described herein, was and is in violation of the Data Protection Act 2018 (the "2018 Act"), which incorporated the General Data Protection Regulation ("GDPR").

135.   Plaintiff and members of the Subclass are "data subjects," as defined at § 3(5) of the 2018 Act.

136.   Plaintiff and members of the Subclass provided Defendants with their PII while in the United Kingdom.

137.   Defendants are "controllers," as defined at §§ 3(6) and 6 of the 2018 Act.

138.   Defendants are established outside of the United Kingdom.

139.   Although Defendants are data controllers not established in the United Kingdom, the data processing activities complained of herein are related to the monitoring of data subjects' behavior within the United Kingdom and, as such, pursuant to § 22 of the 2018 Act, is subject to the 2018 Act as well as the UK GDPR.

140.   Defendants collected and stored Plaintiff's and the members of the Subclass's "personal data," as defined at § 3(2) of the 2018 Act.

141.   Accordingly, pursuant to § 2(1)(a) of the 2018 Act, Defendants were

required to process Plaintiff's and the Subclass's PII "lawfully and fairly, on the basis of the data subject's consent or another specified basis."

142. Defendants' conduct violates the 2018 Act because they failed to process Plaintiff's and the Subclass's PII lawfully or fairly as they failed to, *inter alia*, maintain reasonably adequate cybersecurity controls or practices to avoid the unauthorized access and exposure of sensitive PII, and also failed to delete the personal data of Plaintiff and the Subclass Members where it was no longer required.

143. As a direct and proximate result of Defendants' conduct, Plaintiff and Subclass Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

144. As the controllers involved in processing personal data, Defendants are liable for the damage caused by its processing which violates the 2018 Act.

145. Defendants' actions alleged herein caused Plaintiff and the Subclass Members to have their personal data shared with unknown sources without adequate consent or a legitimate business interest, thereby causing injury.

146. Accordingly, Plaintiff and the Subclass Members are entitled to

compensation for all material and non-material damage, including distress, pursuant to §§ 168–69 of the 2018 Act.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as follows:

A.     For an Order certifying the Classes, and appointing Plaintiff and his Counsel to represent the Classes;

B.     For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members;

C.     For injunctive relief and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

    i.     prohibiting Defendants from engaging in the wrongful acts described herein;

    ii.     requiring Defendants to protect all data collected during the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

    iii.     requiring Defendants to delete the PII of Plaintiff and Class Members unless Defendants can provide a reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.     requiring Defendants to implement and maintain a comprehensive information security program designed to protect the confidentiality and integrity of the PII they collect; and

v. requiring Defendants to audit, test, and train their vendors regarding data protection procedures.

D. For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G. Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 22, 2024

/s/ Adam T. Hoover
Adam T. Hoover
Marc G. Reich
**Reich Radcliffe & Hoover LLP**

Gregory M. Egleston
**Gainey McKenna & Egleston**

*Counsel for Plaintiff*